UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STACEY KNIGHT

                Plaintiff,

-v-

CITY OF NEW YORK, *et al.*,

                Defendants.

No. 16-cv-7888 (RJS)
OPINION & ORDER

RICHARD J. SULLIVAN, Circuit Judge:

Plaintiff Stacey Knight brings this action pursuant to 42 U.S.C. § 1983 against Corrections Captain Akilah Biggs, and Corrections Officers Xavier Smith and Lloyd Reid (collectively, "Defendants"), asserting excessive force in violation of the Fourteenth Amendment. Now before the Court is Defendants' motion for summary judgment. For the reasons stated below, Defendants' motion is DENIED.

I. BACKGROUND

A. Facts

On December 13, 2015, Stacey Knight was an inmate at the Otis Bantum Correctional Center ("OBCC"), a facility maintained by the New York City Department of Correction ("DOC").[1] (Doc. No. 131 ("Def. 56.1") ¶ 1). That day, Biggs, Smith, and Reid – who were City of New York employees assigned to the DOC – executed a tactical search operation ("TSO") at

---

[1] The following facts are taken from the parties' Local Civil Rule 56.1 statements (Doc. Nos. 131, 135), the affidavits and declarations submitted in connection with the instant motion, and the exhibits attached thereto. Unless otherwise noted, where one party's 56.1 statement is cited, the other party does not dispute the fact asserted, has offered no admissible evidence to refute that fact, or merely objects to inferences drawn from that fact. In deciding this motion, the Court also considered Defendants' memorandum of law in support of its motion (Doc. No. 130 ("Mem.")), Plaintiff's memorandum of law in opposition to the motion (Doc. No. 133 ("Opp'n")), and Defendants' reply brief (Doc. No. 138 ("Reply")), as well as the declarations and materials submitted in support of those memoranda.

OBCC in response to a slashing that occurred the day before. (*Id.* ¶¶ 7–9.) Biggs' team searched the 5 Lower housing area of OBCC, which at that time housed inmates recently taken into DOC custody. (*Id.* ¶¶ 10–12.) The goal of the TSO was to remove unauthorized items from housing areas. (*Id.* ¶ 9.)

Upon entering the Lower 5 housing area, Biggs saw that Knight was wearing unauthorized footwear, and ordered him to change into approved footwear. (*Id.* ¶¶ 13–14.) Defendants contend that Knight persistently refused Biggs' order to change his shoes, refused Biggs' instruction to turn around to be handcuffed, and grew aggressive. (*Id.* ¶¶ 15, 17; Doc. No. 140 ("Def. Counter") ¶ 49.) Knight tells a slightly different story, saying that he initially gave up his sneakers voluntarily, but the authorized footwear did not fit him. (Doc. No. 135 ("Pl. 56.1") ¶ 15, 49–51.) Knight states that soon thereafter he was handcuffed (*id.* ¶¶ 15, 53), and did not offer any resistance to being handcuffed (*id.* ¶ 54).

There is no dispute that Biggs thereafter ordered Reid to use his handheld oleoresin capsicum spray on Knight. (Def. 56.1 ¶¶ 18–20.) When Reid's spray did not work as intended – it discharged a thick liquid instead of a mist (Doc. No. 129-8 at 26), hitting Knight on the side of his face and ear – Biggs ordered Smith to spray Knight, which he did with a two-second burst of pepper spray into Knight's face (Def. 56.1 ¶¶ 21, 22.) According to Knight, he was handcuffed before he was sprayed. (Pl. 56.1 ¶ 53). Defendants assert that Knight was sprayed after refusing to be handcuffed, and was placed in handcuffs only after he was sprayed. (Def. Counter ¶ 53.)

After being sprayed, Knight was taken to a shower, given fresh clothing, and taken to OBCC's medical clinic. (Pl. 56.1 ¶ 27.) Immediately following the spraying, Knight experienced burning in his eyes, on the left side of his face, on top of his head, on his neck, and inside his left ear. (Def. 56.1 ¶ 24.) More than a month later, on January 14, 2016, Knight visited the medical

clinic again, and complained of an infection in his left ear. (Def. 56.1 ¶ 28.) Over the next several months, Knight made a number of visits to the medical clinic and was prescribed various antibiotics for pain in his left ear. (*Id.* ¶¶ 29, 31–37; Pl. 56.1 ¶¶ 61–67.) On March 21, after complaining of hearing loss, Knight underwent a pure tone audiometric evaluation (Def. 56.1 ¶ 37), a subjective test relying on Knight's voluntary responses when tones were played in his ear (*id.* ¶¶ 37–38). At that time, Knight reported that he could not hear in his left ear. (*Id.* ¶ 37.) On November 30, 2017, Knight was evaluated at Albany Medical Center and given more comprehensive testing, which included optoacoustic emissions ("OAE") testing, an objective test that did not rely on Knight's voluntary responses. (*Id.* ¶¶ 40–41.) The OAE results showed both ears functioning at normal hearing levels. (*Id.* ¶ 42.)

B. Procedural History

Former plaintiffs Kyron Bowden, Tyrell Williams, and Eric Allen commenced this action on October 8, 2016 by filing a complaint against the City of New York, Captain Biggs, Corrections Officers Steve Salmon and Michael White, and "John Does 1-5," alleging violations of 42 U.S.C. Sections 1983 and 1988 in connection with the TSO on December 13, 2015. (Doc. No. 1.) Former plaintiffs amended their complaint for the first time on April 17, 2017, identifying the same defendants but correcting some of their names. (Doc. No. 30.) The defendants answered on May 1, 2017. (Doc. No. 31.) On July 5, 2017, former plaintiffs filed a second amended complaint, which Knight joined, that added Reid and Smith, and Dr. Theodore Kramer, as defendants. (Doc. No. 48.) The defendants answered the second amended complaint on August 4, 2017. (Doc. No. 60.)

On March 23, 2018, former plaintiffs Bowden, Williams, and Allen settled their claims with the City of New York and dismissed their claims against all remaining defendants. (Docs.

3

No. 112 and 113.) Thus, the only remaining plaintiff was Knight. On June 21, 2018, Knight voluntarily dismissed all claims against Dr. Kramer. (Doc. No. 122). And on August 17, 2018, Knight agreed to dismiss all claims against the City of New York, and Officers Salmon and White. (Doc. No. 132). The same day, remaining defendants – Biggs, Smith, and Reid – moved for summary judgment. (Doc. No. 128.) The motion was fully briefed on October 1, 2018. (Doc. No. 138.)

## II. LEGAL STANDARD

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is "no genuine dispute as to any material fact" where (1) the parties agree on all facts (that is, there are no disputed facts); (2) the parties disagree on some or all facts, but a reasonable fact-finder could never accept the nonmoving party's version of the facts (that is, there are no genuinely disputed facts), *see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); or (3) the parties disagree on some or all facts, but even on the nonmoving party's version of the facts, the moving party would win as a matter of law (that is, none of the factual disputes are material), *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a fact is genuinely disputed, a court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996). Nevertheless, to show a genuine dispute, the nonmoving party must provide "hard evidence," *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be

4

drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (quoting *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997)). "Conclusory allegations, conjecture, and speculation," *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998), as well as the existence of a mere "scintilla of evidence in support of the [nonmoving party's] position," *Anderson*, 477 U.S. at 252, are insufficient to create a genuinely disputed fact. A moving party is "entitled to judgment as a matter of law" on an issue if (1) it bears the burden of proof on the issue and the undisputed facts meet that burden; or (2) the nonmoving party bears the burden of proof on the issue and the moving party "'show[s]' – that is, point[s] out . . . – that there is an absence of evidence [in the record] to support the nonmoving party's [position]." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

### III. DISCUSSION

Section 1983 provides a civil cause of action for damages against any person who, acting under color of state law, deprives another of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See* 42 U.S.C. § 1983. "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999). To prevail on a claim under Section 1983, a plaintiff must demonstrate: (1) the deprivation of a right, privilege, or immunity secured by the Constitution or laws of the United States (2) by a person acting under the color of state law. *Id.* The plaintiff must also establish that the defendant was "personally involved in the unconstitutional conduct." *Green v. Bauvi*, 46 F.3d 189, 194 (2d Cir. 1995).

Knight's sole remaining claim alleges that Defendants used excessive force against him in violation of the Fourteenth Amendment. (Doc. No. 48 ¶¶ 68–73.) Defendants' motion for summary judgment rests on two grounds. First, they argue that the evidence adduced shows that

5

any force used against Knight was objectively reasonable, and thus did not rise to the level of a constitutional violation. Second, Defendants argue that even if Knight's constitutional rights were violated, they are entitled to qualified immunity. Neither argument is persuasive.

## A. Excessive Force

"[T]he right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Pretrial detainees bringing excessive force claims "must show only that the force purposely or knowingly used against [them] was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). "[O]bjective reasonableness turns on the 'facts and circumstances of each particular case,'" *id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)), and the Court must determine objective reasonableness "from the perspective of a reasonable officer on the scene, including what the officer knew at the time," and accounting for the "'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,'" *id.* (quoting *Wolfish*, 441 U.S. at 540). "[T]he effective management of the detention facility once the individual is confined" has been determined by the Supreme Court to be "a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." *Wolfish*, 441 U.S. at 540. A non-exclusive list of the considerations that may bear on the reasonableness of the use of force includes: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made . . . to temper or to limit the amount of force; the severity of the security problem . . .; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 135 S. Ct. at 2473.

6

This case is remarkably similar to *Tracy v. Freshwater*, 623 F.3d 90 (2d Cir. 2010), in which the Second Circuit affirmed the denial of summary judgment where, as here, the defendant and the plaintiff-detainee disputed whether plaintiff had been handcuffed at the time he was sprayed and whether he had been physically resistant. *Id.* at 98. Because the district court was "compelled to credit [plaintiff's] version of events," the Court of Appeals held that "a reasonable juror could find that the use of pepper spray deployed mere inches away from the face of a defendant already in handcuffs and offering no further active resistance constituted an unreasonable use of force." *Id.*

As was the case in *Tracy*, the parties here dispute a central fact: whether or not Knight was handcuffed when Reid and Smith sprayed him. Knight says he was "handcuffed when officers sprayed him with OC spray." (Pl. 56.1 ¶ 53). Defendants assert, based upon deposition testimony of Briggs and Smith, that "Plaintiff refused to turn around to be handcuffed, was sprayed with OC, and was subsequently handcuffed." (Def. Counter ¶ 53.) Relatedly, the parties also dispute the level of resistance that Knight offered in response to the request to change his footwear, with Defendants insisting that Knight refused to comply with their instructions and threatened them by moving and lunging toward them (Doc. No. 129-7 at 18), thereby justifying the use of "limited force" in response (Mem. at 6–7), and Knight maintaining that he "did not resist being handcuffed" (Pl. 56.1 ¶ 54).

Crediting Knight's version of events at this stage, as we must, *see Okin v. Vill. of Cornwall–on–Hudson Police Dep't*, 577 F.3d 415, 427 (2d Cir. 2009), the Court is plainly bound by *Tracy*'s holding that deploying pepper spray on a detainee, who, as Knight claims, was handcuffed and not actively resisting, could constitute unreasonable force in violation of the Fourteenth Amendment. *See Tracy*, 623 F.3d at 99 ("[I][f a jury credited Tracy's version of the events and determined that

Freshwater applied pepper spray after Tracy had already been handcuffed and was offering no physical resistance of police commands, it might well conclude that the use of that pepper spray was unreasonable under the circumstances.").

Defendants nevertheless insist that they are entitled to summary judgment because objective medical testing shows that, at least since November 30, 2017, Knight has no detectable hearing loss. (Pl. 56.1 ¶ 40–41.) But the Supreme Court has already rejected the argument that "'significant injury' is a threshold requirement" for stating an excessive force claim. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). The "core judicial inquiry," the Court held, was not whether "a certain quantum of injury was sustained," but rather whether the force was applied "in a good-faith effort to maintain or restore discipline," or "maliciously and sadistically to cause harm." *Id*. The fact that Knight may have been fortuitous in only sustaining minor injuries does not warrant a conclusion that, as a matter of law, the force used on him was not constitutionally excessive. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury."). As this Circuit has recognized, the "infliction of pepper spray . . . has a variety of incapacitating and painful effects," *Tracy*, 623 F.3d at 98, and, by its very terms, "constitutes a significant degree of force," *id*. And while the jury is certainly free to consider the inconsistency between the objective medical evidence and Knight's claimed loss of hearing in assessing Knight's credibility, such credibility findings are reserved for the jury and are not appropriate on a motion for summary judgment. *See Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996).

### B. Qualified Immunity

Alternatively, Defendants argue that even if a jury could find that their use of force was

unreasonable, they would still be entitled to qualified immunity for their actions. (Mem. at 9.) When evaluating a defense of qualified immunity, a court must determine, first, "whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right," and second, "whether that right was clearly established at the time of the alleged violation." *Tracy*, 623 F.3d at 96. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 335 (1986).

As discussed above, *Tracy* holds that a jury could find that, if Knight's version of events was true, such force was constitutionally excessive. *Tracy*, 623 F.3d at 99. Defendants nonetheless argue that it was not clearly established at the time of the incident that they could not use pepper spray to force Knight's compliance with rules "integral to institutional security." (Mem. at 10.) But as in *Tracy*, "no reasonable officer could have believed that he was entitled to use pepper spray gratuitously against a restrained and unresisting arrestee." 623 F.3d at 99 n.5; *see also id.* ("[T]he use of entirely gratuitous force is unreasonable and therefore excessive." (citing *Breen v. Garrison*, 169 F.3d 152, 153 (2d Cir. 1999))). Thus, construing the facts in a light most favorable to Knight, it is clear that, at least since *Tracy*, deploying pepper spray in the face of a defendant "already in handcuffs and offering no further active resistance" constitutes a clearly established unreasonable use of force. *Id.* at 98.

Defendants further argue that Reid and Smith are entitled to qualified immunity because they were following "plausible instructions from a superior officer" which, when "viewed objectively in light of the surrounding circumstances, . . . could lead a reasonable officer to conclude that the necessary legal justifications for his actions exist[ed]." *Anthony v. City of New York*, 339 F.3d 129, 138 (2d Cir. 2003) (quoting *Bilida v. McCleod*, 211 F.3d 166, 174–75 (1st

Cir. 2000). But while it is true that "responding to the order of a superior officer" may serve to immunize an inferior officer from suit, such situations tend to arise where the responding officer is not privy to the details or circumstances that gave rise to the order. *See Bilda*, 211 F.3d at 175 ("Upon receiving an explicit order to go to the home and seize the animal, [the subordinate officers] had every reason to think that Captain Tyler had secured a warrant or concluded (possibly based on exigent circumstances unknown to [the subordinate officers]) that one was unnecessary)."). Clearly, not every order from a superior officer entitles a defendant to qualified immunity. Here, Defendants do not explain how Biggs' order could reasonably have led her subordinates to "conclude that the necessary legal justification" for pepper spraying Knight existed, given that – according to Knight – Reid and Smith had first-hand knowledge of the relevant circumstances, and were aware that Knight was already in handcuffs and compliant, and therefore posed no threat to the officers. Thus, Defendants are not entitled to qualified immunity at this stage of the litigation.

IV. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is DENIED. The Clerk of the Court is respectfully directed to terminate the motion pending at Doc. No. 128.

Dated: January 2, 2019
New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation